### CLARK et al. v. JACKSONVILLE COMPRESS CO.

#### Civil No. 306.

District Court, E. D. Texas, Tyler Division. Nov. 22, 1941.

Pollard, Lawrence & Reeves, of Tyler, Tex., for plaintiffs.

Callaway & Reed, of Dallas, Tex., for defendant.

BRYANT, District Judge:

### Findings of Fact

1. Plaintiffs are residents of Cherokee County, Texas.

2. Defendant is a corporation, organized and existing under and by virtue of the laws of the State of Texas, having its principal office and place of business (within the city limits) at Jacksonville, Cherokee County, Texas.

3. Defendant is and at all times relevant hereto was engaged, at its place of business in Jacksonville, Cherokee County, Texas, in storing, handling and compressing cotton.

4. Cotton is an agricultural commodity.

5. All of the operations performed by defendant are, and at all times relevant hereto were, performed at its place of business in Jacksonville, Texas, as bailee for hire. Defendant does not and did not at any time relevant hereto produce, own, buy, sell, or transport cotton, or for its own account receive, ship, deliver, store, compress, or otherwise handle cotton.

6. All of the cotton stored, compressed, or otherwise handled by defendant was received at defendant's place of business from Texas farms, all of such cotton being received from points and places within 75 miles and within the general vicinity of defendant's place of business. Of all of the cotton received at defendant's place of business during the entire period of time covered by the complaint herein (32,476 bales of cotton) 10.1 per cent originated within 10 miles, 75.2 per cent within 20 miles, 81.1 per cent within 30 miles, 84.4 per cent within 40 miles, 95.3 per cent within 50 miles, 99.5 per cent within 60 miles, 99.6 per cent within 70 miles, and 100 per cent within 75 miles of defendant's place of business, the average distance from all origins to defendant's place of business for each bale received being 23.6 miles. (Stated distances are by railroad or highway, in accordance with the mode of transportation used.)

7. All of the plaintiffs were employed by the defendant at its place of business at Jacksonville, Texas, and each of the 44 plaintiffs was engaged at such place of business in defendant's operations of storing, handling, and compressing cotton.

8. During the crop year 1940 there were produced (a) in Cherokee County, Texas, 15,300 bales of cotton; (b) in Cherokee County, and in counties contiguous to Cherokee County, 129,213 bales; and (c) in counties the near borders of which lie within 50 miles of Jacksonville, Texas, 317,911 bales of cotton. During the crop year 1939 there were produced (a) in

Cherokee County, Texas, 16,350 bales of cotton; (b) in Cherokee County and in counties contiguous to Cherokee County, 123,000 bales; and (c) in counties the near borders of which lie within 50 air-line miles of Jacksonville, Texas, 306,305 bales of cotton. Cotton is produced within the city limits of Jacksonville, Texas, and in all directions therefrom within ¼ mile of such city limits.

9. Each of the plaintiffs was employed by the defendant within the area of production of cotton. This would be true under any valid definition of "area of production" which might be promulgated.

10. Insofar as cotton is concerned, the Administrator of the Wage and Hour Division of the United States Department of Labor has successively defined "area of production" as follows:

(1) October 22, 1938. "Section 536.2 'Area of Production' as used in Section 13 (a) (10) of the Fair Labor Standards Act [29 U.S.C.A. § 213(a) (10)].—An individual shall be regarded as employed in the 'area of production' within the meaning of Section 13(a) (10), in handling, packing, storing, ginning, compressing, pasteurizing, drying, preparing in their raw or natural state, or canning of agricultural or horticultural commodities for market, or in making cheese or butter or other dairy products—

"(a) if he is engaged in such work on a farm and on agricultural or horticultural commodities produced exclusively on such farm, or

"(b) if the agricultural or horticultural commodities are obtained by the establishment where he is employed from farms in the immediate locality and the number of employees in such establishment does not exceed seven."

(2) June 17, 1939: "Section 536.2 'Area of Production' as used in Section 13(a) (10) of the Fair Labor Standards Act. An individual shall be regarded as employed in the 'area of production' within the meaning of Section 13(a) (10), in handling, packing, storing, ginning, compressing, pasteurizing, drying, preparing in their raw or natural state, or canning of agricultural or horticultural commodities for market, or in making cheese or butter or other dairy products:

"(a) if he performs those operations on materials all of which come from farms in the general vicinity of the establishment where he is employed and the number of employees engaged in those operations in that establishment does not exceed seven, or * * *

"(d) if he performs those operations on materials all of which come from farms in the immediate locality of the establishment where he is employed and the establishment is located in the open country or in a rural community. As used in this subsection (d), 'immediate locality' shall not include any distance of more than ten miles and 'open country' or 'rural community' shall not include any city or town of 2,500 or greater population according to the 15th United States Census, 1930."

(3) April 1, 1941: "Section 536.2 'area of production' as used in Section 13(a) (10) of the Fair Labor Standards Act. An individual shall be regarded as employed in the 'area of production' within the meaning of Section 13(a) (10) in handling, packing, storing, ginning, compressing, pasteurizing, drying, preparing in their raw or natural state, or canning of agricultural or horticultural commodities for market, or in making cheese or butter or other dairy products:

"(a) if he performs those operations on materials all of which come from farms in the general vicinity of the establishment where he is employed and the number of employees engaged in those operations in that establishment does not exceed ten, or"

11. No place of business equipped with machinery for the compressing of cotton is located upon a farm.

12. No establishment engaged in storing, compressing, and handling cotton receives all of the cotton obtained by it from a single farm.

13. The complete operation of compressing of cotton, as a practical matter, cannot be performed by less than 30 persons.

14. Insofar as cotton is concerned, each purported definition of "area of production" promulgated by the Administrator is such that, if given full effect as such, virtually every establishment engaged in compressing, storing and handling cotton would be denied application of the exemption granted by Section 13(a) (10) of the Act, regardless of its actual location with respect to the production of cotton.

15. Of the cotton which was shipped from defendant's place of business during the period covered by the complaint herein,

**46**

while 70.8 per cent moved to other points in Texas, and only 29.2 per cent moved directly to points outside the State of Texas, the substantial preponderance of all of such cotton was and is intended for ultimate movement to points outside the state.

16. Virtually all cotton received at defendant's place of business is compressed prior to movement therefrom.

17. For employment by defendant during the periods of time involved herein, each of the plaintiffs received from defendant wages in accordance with their various contracts of employment, which in the aggregate were and are less than 25 cents for each hour worked during the period October 24, 1938, to October 23, 1939, inclusive, and less than 30 cents for each hour worked subsequent to October 23, 1939.

### Conclusions of Law

1. The court has jurisdiction of the parties and of the subject matter of the complaint.

2. All of the plaintiffs were engaged in the storing, compressing, and handling of cotton for interstate commerce within the meaning of the Fair Labor Standards Act of 1938.

3. Section 13(a) (10) of the Fair Labor Standards Act of 1938 exempts from the minimum wage, and maximum hours and overtime provisions of the act "any individual employed within the area of production (as defined by the Administrator), engaged in handling, packing, storing, ginning, compressing, pasteurizing, drying, preparing in their raw or natural state, or canning of agricultural or horticultural commodities for market, or in making cheese or butter or other dairy products;"

4. All of the plaintiffs were at all times relevant hereto engaged in storing, compressing and handling cotton, an agricultural commodity, for market, within the meaning of Section 13(a) (10) of the Fair Labor Standards Act of 1938.

5. The Administrator of the Wage and Hour Division has no authority to prescribe any qualification, condition, restriction or limitation upon the application or operation of the exemption granted by Section 13(a) (10) of the Fair Labor Standards Act of 1938, or to make any definition with relation thereto, excepting only the authority to define "area of production."

6. The Administrator has no authority to prescribe any condition, qualification, restriction or limitation upon the application or operation of the said exemption, such as requirements (a) that the employee be employed or engaged upon a farm, or in connection with commodities produced exclusively upon a single farm, (b) that the materials or commodities obtained by the establishment where the employee is employed come from farms in the immediate locality, within ten miles, or within the general vicinity of such establishment, (c) that the number of employees in such establishment, or engaged in operations named in the said exemption be restricted to a certain number, or (d) that the place of employment be located in the open country or a rural community, or in a city or town having a population of not more than a certain number of persons. Such requirements have no reasonable relation to a valid definition of "area of production," or to the congressional grant of authority. They are capricious, arbitrary, and void.

7. It cannot be said that Congress granted an exemption by Section 13(a) (10) of the Act and then empowered the Administrator to withhold application or operation of that exemption by refusing or failing to make a proper and valid definition of "area of production," or by purporting to define "area of production" and combining with the purported definition one or more unauthorized and invalid qualifications of the application of the purported definition. In the absence of a valid definition by the Administrator, the court must determine whether the plaintiffs were employed by the defendant within the area of production of cotton within the legislative intent.

8. In the absence of a valid definition, by the Administrator, of "area of production," the plaintiffs, and each of them, within the meaning of Section 13(a) (10) were employed by the defendant within the area of production of cotton.

9. The plaintiffs, and each of them, were engaged in the operations of storing, compressing and handling cotton.

10. The plaintiffs, and each of them, are wholly exempt from the minimum wage, maximum hours, and overtime provisions of Sections 6 and 7 of the Fair Labor Standards Act of 1938, 29 U.S.C.A. §§ 206, 207.

11. Defendant's failure to pay to the plaintiffs, or any of them, wages at the

rates provided for in Section 6 of the Fair Labor Standards Act of 1938 does not constitute a violation by defendant of that Act.

12. If any of the plaintiffs were entitled to any recovery under the Fair Labor Standards Act (which they are not), that portion of any claim in existence for two years at the time of the filing of the action would be barred by the Texas two-year statute of limitation, Vernon's Ann. Civ.St.Texas, art. 5526, § 4.