**SILGARO v. PORT COMPRESS CO.**
Civ. A. No. 117.

District Court, S. D. Texas, Corpus Christi
Division.

April 16, 1942.

"(1) for a workweek longer than forty-four hours during the first year from the effective date of this section,

"(2) for a workweek longer than forty-two hours during the second year from such date, or

"(3) for a workweek longer than forty hours after the expiration of the second year from such date,
unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

The nature of defendant's business is set forth in the stipulation, a portion of which I quote:

"The parties stipulate that defendant is a service organization, which has as its function the receipt of gin bales of cotton from its customers, which bales are compressed in high density presses for the purpose of reducing the size of the bales of cotton, and that the compress stores the cotton, incidental to the compressing function. That defendant does not manufacture goods for commerce or produce goods moving in commerce, but that more than seventy-five per cent of the cotton received and run through the high density compresses ultimately moves in interstate commerce. It is stipulated that plaintiff's duties related to the performance by the defendant of these functions.

"The defendant has been engaged, at all times material hereto, in the business of compressing and storing cotton at a plant owned and operated by it in the City of Corpus Christi, Nueces County, Texas.

"Defendant does not engage in any process of production or manufacture of cotton. The cotton handled is not wrought into any other form or refined or treated in any way that facilitates or contributes to its being manufactured or wrought into goods. Defendant's function does not alter, in any wise, the raw state of the cotton but relates purely to the size and shape of the raw bundles and to the safekeeping thereof, and is all performed in Corpus Christi, Nueces County, Texas.

"The parties agree that the defendant is engaged in the business of the compressing of cotton, and operates for profit a plant in Corpus Christi, Nueces County, Texas, in which the cotton is compressed and in which it is stored, in the same plant, before and after the compressing function.

Pichinson & Alsup, of Corpus Christi, Tex., for plaintiff.

Kemp, Lewright, Dyer, Wilson & Sorrell, of Corpus Christi, Tex., for defendant.

KENNERLY, District Judge.

Plaintiff, a former employee of defendant, in his complaint filed February 5, 1941, sues defendant under the Fair Labor Standards Act of 1938, 29 U.S.C.A. §§ 201 to 219, for overtime between July 1, 1939, and September 6, 1940, and damages and attorney's fees, as provided in such Act. Defendant, owner and operator of a compress for the compressing of cotton for others for hire, in its amended answer, filed January 26, 1942, denies that either it or plaintiff, its employee, were, during such period, engaged in commerce or in the production of goods for commerce, and claims that neither of them came within the Act. Further, that they did not come within the Act, because, as defendant says, they were exempt under Subsection (c) of Section 7 and under Paragraph 10 of Subsection (a) of Section 13 of the Act.

The case has been submitted upon two stipulations, which are referred to and are quoted from as necessary.

1. Plaintiff's case is bottomed on that portion of Subsection (a) of Section 7 of the Act, 29 U.S.C.A. § 207, reading as follows:

"No employer shall, except as otherwise provided in this section, employ any of his employees who is engaged in commerce or in the production of goods for commerce—

Said plant contains elaborate and heavy machinery, known as high density presses, which are used to compress bales of cotton to a higher or greater density and in connection with the operation of the compress, the press owns a large area, or space, where cotton is kept and protected from the elements, before and after it is pressed. Raw, ginned cotton is concentrated from the area described and customarily is compressed when owners produce shipping orders, but considerable quantities of cotton bales are compressed and remain on the press for varying lengths of time, pending sale and shipment by the owners. All cotton which arrives at the compress in flat bales, or gin bales, is pressed with high density compress machinery, before it is shipped or leaves the plant. The plant also contains switching facilities, scales, docks, runways and office furniture and fixtures, and other usual and necessary types and kinds of facilities for the handling, recording and safekeeping of cotton. The handling of the cotton at the compress is done by the defendant, for a charge, paid by defendant's customers, the owners of the cotton, which charge covers the function of compressing the same, and the safekeeping and custody thereof in defendant's storage space and storage facilities operated in connection with the compress for a reasonable period, before and after the cotton is compressed and, in some instances, where the movement of the cotton is delayed, and where it is allowed to remain in the defendant's plant for a longer period, an additional charge is made.

"All of said facilities hereinabove described are intimately interrelated each with the other and constitute integral but not integrated parts of the unit, which is the plant operated for the compressing of cotton. The movement of the cotton from adjacent switching docks and from docks into defendant's plant and the safekeeping thereof, before and after it is compressed, and the movement of the cotton to portside are necessary and incidental to the function of compressing the same."

The nature of plaintiff's work for defendant is set forth in the stipulation, a portion of which I quote:

"Plaintiff's work was related to the defendant's business of compressing and storing cotton at its said plant in Corpus Christi and his duties and services constituted an integral part of the operation of the business of compressing cotton at said plant.

"The place of employment where defendant is engaged in the compressing of cotton at all times material hereto, necessarily included the warehouse, docking and switching facilities owned and operated by the defendant, and the plaintiff, Silgaro, was employed and worked during the times in question in said place of business."

The details of plaintiff's employment are set forth in the margin.[1]

---

[1] "The parties agree that, from July 1, 1939, to September 6, 1940, plaintiff's duties were those of a general utility laborer in the compress and during that period of time were distributed in connection with the operation of the compress as follows:

"From July 1, 1939, to August 15, 1939, he averaged three days per week painting and repairing tractors, trailers, trucks and cars used in connection with the operation of the compress. He averaged one day a week during such period washing trucks and cars used in connection with the operation of the compress, and the remainder of the week during such period of time, he worked compressing cotton, unbuckling bands on the tie press, trucking cotton, as a band returner, operating a steam bale hoist and assisting in loading compressed cotton on trailers and trucks.

"From August 15, 1939, to December 1, 1939, he average four days per week on the high density press as a band returner, tying cotton, trucking cotton and as utility man in operating and driving a tractor, hauling cotton from the compress to dockside and to the Aransas Compress. He spent the rest of the time each week during said period of time washing cars, driving tractors and re-marking cotton on the docks and as a general laborer around the press.

"His duties from December 1, 1939, to July 1, 1940, were the same as during the period of time between August 15, 1939, and December 1, 1939, except that he averaged substantially more time working around the high density press as a band returner, tying cotton and trucking cotton from the compress sheds to the high density press.

"From July 1, 1940, to August 20, 1940, his duties were substantially the same as between July 1, 1939, and August 15, 1939.

"His duties from August 20, 1940, until September 6, 1940, consisted of working around the high density press two days per week as a band returner, tying cotton and trucking cotton from shed

■ Under these circumstances, I conclude that both plaintiff and defendant were engaged, during the period of employment, in the production of goods for commerce within the meaning of the Act as to that part of the cotton compressed by defendant which moved in commerce. Warren-Bradshaw Drilling Co. v. Hall, 5 Cir., 124 F.2d 42.

2. The working hours of plaintiff are stipulated: "It is stipulated by the parties that from July 1, 1939, to September 6, 1940, plaintiff worked sixty hours per week, at thirty cents per hour, straight time, and during said period of time he worked fourteen Sundays additionally, ten hours per day, at straight time of thirty cents per hour."

■ But it may I think be regarded as settled in this Circuit and District that where, as here, an employee works both in intrastate and interstate commerce, he must, in order to recover under the Act, prove and point out what part of his work was in intrastate and what part in interstate commerce. Super-Cold Southwest Co. v. McBride, 5 Cir., 124 F.2d 90, 91, and cases there cited. This, plaintiff has not done. It has been stipulated that more than 75%, but not all, of the cotton compressed by defendant moved in interstate commerce, and plaintiff does not show the time he was employed on the 75% and the time employed on the other.

3. The first exemption claimed by defendant is under Subsection (c) of Section 7 of the Act, 29 U.S.C.A. § 207, the pertinent portion of which reads as follows (italics supplied): "In the case of an employer engaged in the first processing of milk, whey, skimmed milk, or cream into dairy products, *or in the ginning and compressing of cotton,* or in the processing of cottonseed, or in the processing of sugar beets, sugar beet molasses, sugarcane, or maple sap, into sugar (but not refined sugar) or into syrup, the provisions of subsection (a) shall not apply to his employees in any place of employment where he is so engaged; and in the case of an employer engaged in the first processing of, or in canning or packing, perishable or seasonal fresh fruits or vegetables, or in the first processing, within the area of production (as defined by the Administrator), of any agricultural or horticultural commodity during seasonal operations, or in handling, slaughtering, or dressing poultry or livestock, the provisions of subsection (a), during a period or periods of not more than fourteen workweeks in the aggregate in any calendar year, shall not apply to his employees in any place of employment where he is so engaged."

It is perfectly plain that under the stipulation, defendant was not, during the employment period, engaged "in the ginning *and* compressing of cotton." So that under the language used by Congress in Subsection (c), the parties are not exempt from the provisions of Subsection (a).

But defendant says that it is a matter of common knowledge [2] that there is no such thing in the cotton industry in the United States as a plant in which the cotton is *both* ginned and compressed. If this be correct, will the Courts then say that Subsection (c) exempts those engaged in ginning cotton or those engaged in compressing cotton? It would seem more logical to say that it exempts those engaged in ginning cotton, because the wording respecting ginning and compressing is found in the same Subsection with and in the company of exemptions which relate to first processing activities, and ginning is among the first of processing activities respecting cotton while compressing is not.

If the wording "ginning and compressing" is to be construed different from the plain language used by Congress, I would incline to the view that the Courts would say that Congress, by the use of the words, meant the ginning and pressing or baling (not compressing), meaning the first processing which cotton undergoes on or near the farm where produced.

■ It is sufficient to say that under the facts stipulated, the parties are not exempt

space to the high density press, and two days each week hauling cotton from the high density press, after the same came off the high density press, to portside and to the Aransas Compress, and about two days each week during such period was spent in hauling cotton from the press to portside and the balance of the week was consumed in washing trucks, cars and tractors and greasing trailers used in transporting compressed cotton from the high density presses to portside."

[2] Part of Paragraph XIII of the Stipulation reads as follows:

"It is further stipulated that cotton gins do not compress cotton with high density presses."

under Subsection (c) from the provisions of Subsection (a).

4. The second exemption claimed by defendant is under a portion of Subsection (a) of Section 13 of the Act (Paragraph 10 of Subsection (a) of Section 213, 29 U.S.C.A.), the pertinent portion of which reads as follows (italics supplied):

"(a) The provisions of sections 6 [206] and 7 [207] shall not apply with respect * * *

"(10) to any individual employed within the area of production *(as defined by the Administrator),* engaged in handling, packing, storing, ginning, compressing, pasteurizing, drying, preparing in their raw or natural state, or canning of agricultural or horticultural commodities for market, or in making cheese or butter or other dairy products."

Without doubt, defendant, as employer, and plaintiff, as employee, were during the employment period engaged in the work of handling, packing, storing, compressing, etc., cotton, an agricultural commodity, for market, and the only question is whether such work was done and performed by plaintiff "within the area of production" as provided in such Subsection.

It appears that the administrator has several times defined the term "within the area of production", but that the definition made June 16, 1939, is the controlling one during the employment period here. Any earlier definitions were repealed by that of June 16, 1939, and any later ones were made after the employment period.

The definition of June 16, 1939, is as follows:

"An individual shall be regarded as employed in the 'area of production' within the meaning of Section 13(a) (10), in handling, packing, storing, ginning, compressing, pasteurizing, drying, preparing in their raw or natural state, or canning of agricultural or horticultural commodities for market, or in making cheese or butter or other dairy products;

"(a) if he performs those operations on materials all of which come from farms in the *general vicinity* of the establishment where he is employed *and the number of* employees engaged in those operations in that establishment does not exceed seven, or

* * * * *

"(d) if he performs those operations on materials all of which come from farms in the *immediate locality* of the establishment where he is employed and the establishment is located in the open country or in a rural community. As used in this subsection (d), *'immediate locality'* shall not include any distance of more than ten miles, and 'open country' or 'rural community' shall not include any city or town of 2,500 or greater population according to the 15th United States Census, 1930."

Defendant attacks this definition as void, arbitrary, and capricious, and says it should be struck down.

The Act and particularly the findings and declaration of policy of Congress, the various definitions, and the administrative provisions therein, furnish a sufficient standard for the guidance of the Administrator in making a definition, Opp Cotton Mills v. Administrator, 312 U.S. 126, 133, 657, 61 S.Ct. 524, 85 L.Ed. 624, and his definition should, if possible, be given a construction which will permit the Court to uphold it instead of striking it down. I do not find myself in agreement in all respects with Fleming v. Farmers Peanut Co., D.C., 37 F.Supp. 628, and other similar cases.[3] The fact that Congress found it necessary or desirable to empower the Administrator to define the area of production indicates that it was believed not only that changing conditions might bring about changes in the definition, but that the definition might vary in different localities under different conditions. I am unwilling to say that the Administrator, in defining area of production, may not reasonably classify compresses as to number of employees and location (i.e., whether in open country, rural community, town or city, etc.), and define an area of production for each class.

Paragraph (a) of the definition of June 16, 1939, defined "area of production" as applied to compresses where the number of employees did not exceed seven. This definition did not affect nor fix the rights

[3] Other cases are: Lake Wales Citrus Growers Ass'n v. Andrews (Dist.Ct.Fla. 1939), 2 WHR 383, Oral Opinion. See same case (Janes v. Lake Wales Citrus Growers Ass'n), 5 Cir., 110 F.2d 653. Galliup v. Terrell Cotton Warehouse Co., D.C.N.D.Tex.1941 [no opinion for publication]; Clark et al. v. Jacksonville Compress Co., D.C.E.D.Tex.1941, 45 F.Supp. 43; Bowie v. Gonzalez, 1 Cir., 117 F.2d 11. Gordon v. Paducah Ice Mfg. Co., D. C., 41 F.Supp. 980.

of these parties during the employment period, because it clearly appears from the stipulation[4] herein that defendant, during that period, had more than seven employees.

Paragraph (d) of the definition of June 16, 1939, defined "area of production" as applied to compresses located in the open country or in a rural community, and open country and rural community are defined as territory which do not include any city or town of 2500 or greater population, etc. This definition did not affect the rights of these parties during the employment period, because the parties have stipulated that defendant's compress was, during such period, inside the limits of the City of Corpus Christi, a city with a population of approximately 75,000.

▮ The Administrator, therefore, did not, prior to the employment period, define the area of production as applied to defendant's compress which, as stated, had more than seven employees and was not located either in the open country or a rural community. But the failure of the administrator, over this long period of time, to define area of production as applied to defendant's compress should not and cannot deprive defendant of its right to exemption if entitled thereto under the Act, but the Courts will make the definition.

▮ We have, therefore, the question of whether plaintiff was, during the employment period, employed within the area of production of the cotton compressed in defendant's compress. I quote from the stipulation:

"It is further stipulated by the parties that the Port Compress Company is inside the City Limits of the City of Corpus Christi, and that the approximate population of the City of Corpus Christi, during the times involved in this suit, was approximately 75,000.

"At all times material hereto, ninety per cent of the cotton handled by the defendant in its said plant at Corpus Christi was grown and produced in Nueces County, the County wherein defendant is domiciled, and the four adjoining Counties of Refugio, Kleberg, San Patricio and Jim Wells. From July 1, 1939, to September 6, 1940, the period of time covering the controversy between the parties to this suit, defendant received, at its plant in Corpus Christi, 129,114 bales of cotton and, of said bales of cotton, 115,809 bales were grown and produced in said five Counties, in the following respective amounts:

| | |
|---|---|
| Nueces | 84,267 |
| Refugio | 3,740 |
| Kleberg | 1,874 |
| San Patricio | 17,619 |
| Jim Wells | 8,309 |

or ninety per cent of the total amount of cotton received, which five counties constitutes the area of production known as the Coastal Bend area of Texas. Of the remaining ten per cent, eight per cent of the cotton was produced in South Texas and two per cent was grown and produced in West Texas."

While neither proven nor stipulated, I have no doubt that it is true that substantially all, certainly a large part, of the cotton produced in the five counties named is compressed at defendant's compress.

Taking into consideration the purpose of the Act, particularly with respect to those persons who handle or have to do with farm products, I conclude that the work of plaintiff during the employment period was within the area of production of the cotton handled during such period, and such exemption (Paragraph 10 of Subsection (a) of Section 13) is controlling.

From what has been said, it follows that judgment must be rendered for defendant.

---

[4] Paragraph XIV of the Stipulation is as follows:

"It is further stipulated that the average number of employees of the defendant compress, during the period of time involved herein, exceeded ten employees."